OPINION OF THE COURT
Debra Silber, J.
The decision/order on this motion is as follows:
Plaintiffs ex parte application for an order of reference in this foreclosure action is denied despite the lack of opposition, for the reasons herein, and the action is dismissed.
This action was commenced to foreclose a mortgage on real property. Though the case was conferenced extensively with the defendant homeowner’s family in the court’s Foreclosure Settlement Conference Part, none of the defendants have appeared in the action or answered the complaint (except for defendant Secretary of Housing and Urban Development, who appeared by his attorney and waived notice of this application), and the time provided for by law in which defendants were required to answer and/or appear has expired.
The subject mortgage is a reverse mortgage under the U.S. Department of Housing and Urban Development’s (HUD’s) Home Equity Conversion Mortgage (HECM) program. The subject property is located at 156 Hart Street, Brooklyn, New York 11206. On or about January 22, 2010, defendant Vereen executed and delivered a fixed rate note to plaintiff for a maximum amount of $630,000. The note provides for repayment in full upon the occurrence of one of the following events (¶ 6); and the mortgage reflects the same items at paragraph 9:
“(a) The Borrower dies and the Property is not the principal residence of at least one surviving borrower;
“(b) The Borrower conveys all of his or her title to the Property and no other borrower retains title to the property in fee simple or on a leasehold interest as set forth in 24 CFR 206.45
“(c) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one borrower;
“(d) For a period longer than 12 consecutive months, *539 a Borrower fails to physically occupy the property because of physical or mental illness and the Property is not the principal residence of at least one borrower;
“(e) An obligation under the Security Instrument is not performed;
“(f) The maturity date of the reverse mortgage has passed.”
As collateral security for the payment of such indebtedness, defendant executed and delivered to plaintiff a mortgage dated January 22, 2010 and recorded in Kings County on May 3, 2010.
The obligations under the security instrument include “that the Mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the Mortgagee; that the Mortgagor will pay all ground rents, assessments, water rates and other governmental or municipal charges” (¶ 5).
The complaint states that, on or about July 8, 2011, one or more of the events occurred which would entitle the mortgagee to demand payment in full in accordance with the terms of the mortgage. It does not specify which of these events occurred. (Complaint ¶ 4.) However, discussions held by the court and by the court’s referees during the foreclosure settlement conferences revealed that defendant has an unpaid water bill of approximately $5,407.24 due to the City of New York, and that this was the triggering event. That is, failure to pay the water bill, plaintiff claims, entitled plaintiff to accelerate the mortgage as failure to make such payment is a breach of the mortgagor’s obligations under the terms of the mortgage.
The complaint states further that notice of the default was given to the defendant, Lela Vereen, and that the period to cure elapsed, and that plaintiff has elected to declare immediately due and payable the entire balance due.
The court finds that the actions of the plaintiff were prohibited by both the law and the provisions of the reverse mortgage which incorporates these laws by reference.
In “Use Your Home to Stay at Home,” published by the National Council on Aging and approved by HUD as “the official reverse mortgage consumers booklet,” it states:
“Like most Americans, you probably want to stay in your home as you grow older. However, as it gets harder to do things on your own, you may need a helping hand with everyday tasks. It can be costly to pay for help at home, along with home modifica *540 tions and other health needs. For many people, these extra costs are a real burden.
“Older Americans often hold onto their home as a nest egg in case they need extra money. But when that ‘rainy day’ arrives, how do you tap the equity in your home? Some people may tell you to sell the house and move to assisted living or a nursing home.
There is another option. If you’ve owned your house for many years, it could be worth a lot more than you paid to buy it. Home equity is the difference between the appraised value of your home and what you owe on any mortgages. A reverse mortgage can help you convert some of your home equity into cash and continue to live at home for as long as you want.” (At 3.)
In other words, the intent of HUD’s HECM program is to help senior citizens remain in their homes. In fact, HUD guarantees these mortgages, and records a second mortgage in its favor “as collateral security for the guaranty made by the Secretary of HUD.”
HUD’s HECM program is governed by 24 CFR parts 200 and 206. 24 CFR 206.205 states:
“Property charges.
“(a) General. The mortgagor shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner and shall provide evidence of payment to the mortgagee as required in the mortgage.
“(b) Election. A mortgagor may elect to require the mortgagee to pay property charges by withholding funds from monthly payments due to the mortgagor or by charging such funds to a line of credit. The mortgagor may make or rescind such an election at any time. If the sum of the mortgage balance and any unused set asides for repairs and servicing charges has reached the principal limit or the mortgage funds are otherwise insufficient to pay the property charges, the mortgagor shall pay such items as provided in paragraph (a) of this section, even though the mortgagor elected payment to be made by the mortgagee.
“(c) Mortgagor’s failure to make payments. If the mortgagor fails to pay the property charges in a *541 timely manner, and has not elected to have the mortgagee make the payments, the mortgagee may make the payment for the mortgagor and charge the mortgagor’s account. If a pattern of missed payments occurs, the mortgagee may establish procedures to pay the property charges from the mortgagor’s funds as if the mortgagor elected to have the mortgagee pay the property charges under this section. . . .
“(e) Mortgagee’s responsibilities.
“(1) Funds withheld from payments due to the mortgagor for property charges under paragraph (b) of this section shall not be paid into an escrow account. When property charges are actually paid, the mortgagee may add the amount paid to the mortgage balance.
“(2) It is the mortgagee’s responsibility to make disbursements for property charges before bills become delinquent. Mortgagees must establish controls to ensure that the information needed to pay such bills is obtained on a timely basis. Penalties for late payments for property charges must not be charged to the mortgagor unless it can be shown that the penalty was the direct result of the mortgag- or’s error or omission. Early payment of a bill to take advantage of a discount should be made whenever it is to the mortgagor’s benefit.” (Emphasis added.)
As is readily apparent, the regulations governing the HECM program provide plaintiff with a remedy for a mortgagor’s failure to pay property charges. It is a remedy which facilitates the goals of the HECM program to allow senior citizens to remain in their homes as opposed to losing them, and it is a remedy which does not unduly burden the mortgagee, who is permitted to fully recover those funds, with interest. The remedies provided in the law for failure of the mortgagor to pay any property charges do not include foreclosure.
As such, plaintiff cannot foreclose on defendant’s reverse mortgage because of her default in paying the New York City water bill. Furthermore, serving a senior citizen holding a reverse mortgage with a complaint that fails to specify what the default is can only be described as unconscionable.
Therefore, plaintiff’s motion is denied and this action is dismissed.